IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:21-cr-20044-JTF |
| | ) |
| COREY MATTHEW LURRY, | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Corey Matthew Lurry's Motion to Suppress, filed on August 24, 2021. (ECF No. 21.) The Motion was referred to Chief Magistrate Judge Tu M. Pham on August 26, 2021. (ECF No. 24.) The Chief Magistrate Judge held a hearing on December 2, 2021 (ECF No. 39) and issued a Report and Recommendation ("R & R") to Deny Defendant's Motion to Suppress on January 19, 2022. (ECF No. 42.) Defendant filed his Objections to the R & R on February 16, 2022. (ECF No. 45.) The United States filed its Response to Defendant's Objections on March 16, 2022. (ECF No. 51.) For the reasons provided herein, the Court **ADOPTS** the Chief Magistrate Judge's R & R, and **DENIES** Defendant's Motion to Suppress.

**LEGAL STANDARD**

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Regarding those excepted dispositive motions, magistrate judges may

1

still hear and submit to the district court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B). Upon hearing a pending matter, "[T]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2).

"The standard of review that is applied by the district court depends on the nature of the matter considered by the magistrate judge. *See Baker*, 67 F. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures. A district court must review dispositive motions under the *de novo* standard."). Motions to suppress evidence are among the motions in criminal cases that are subject to *de novo* review. *See* 28 U.S.C. § 636 (b)(1)(A); *U.S. Fid. & Guarantee Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992). Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015). A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Brown*, 47 F. Supp. 3d at 674. The district court is not required to review "a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## **FINDINGS OF FACT**

In the R & R, the Chief Magistrate Judge sets forth proposed findings of fact. (ECF No. 42, 1–8.) Facts pertinent to the Motion to Suppress are as follows: Defendant was questioned by law enforcement officers, and later arrested for aggravated assault on July 8. 2020. (*Id.* at 2-3.) The assault was carried out in retaliation for an argument that occurred on July 4, 2020 between Defendant and a victim's family member, Jeremy Williamson ("Williamson") (*Id.*) On July 8, 2020, officers went to a residence to interview a witness. Upon arriving at the residence, officers observed that Lurry was also there. When Sergeant Lacy Hardaway ("Sergeant Hardaway") arrived, he did not know whether Defendant was a victim or a suspect, he "just [knew] that the detectives wanted to talk to him." (*Id.* at 4.) Officers suggested to Defendant that he should go down to the station and give a statement. (*Id.*) Sergeant Hardaway also told Defendant that he was the victim, and that he would not be arrested. (*Id.* at 5.) Soon thereafter, officer Morton[1] pulled Sergeant Hardaway aside and explained that Defendant was a suspect. (*Id.*) Officer Morton received a call from Lieutenants Brett Williams and Charles Jenkins ("Lieutenant Jenkins") instructing the officers to bring Defendant to the precinct for questioning. (*Id.*) Officers did not correct Sergeant Hardaway's earlier statement to Defendant that he was considered a victim and would not be arrested because they wanted to deescalate a potentially volatile situation.[2] (*Id.* at 6 & 11.)

Eventually, Defendant was taken to the precinct where he was interviewed by Lieutenant Jenkins. (*Id.* at 7.) Before the interview, Lieutenant Jenkins read Defendant his *Miranda* warnings. (*Id.* at 14.) Before actual questioning of Lurry, Lieutenant Jenkins presented Defendant with an

---

[1] Officer Morton's first name is unknown.
[2] Officer Hardaway was a Crisis Intervention Team ("CIT") officer with training in how to deescalate volatile situations and get suspects into custody without use of force. (ECF No. 42, 4.)

advice of rights form. (*Id.* at 7.) Defendant told Lieutenant Jenkins that he had a third-grade education and requested that each right be read aloud to him. (*Id.*) As a result, Lieutenant Jenkins read each of the *Miranda* warnings aloud to Defendant and explained what each meant. (*Id.*) Defendant placed his initials next to each right, indicating that he understood them. (*Id*.) Included on this form is Defendant's signature indicating that he understood his *Miranda* warnings and was willing to give a statement to the officers without the presence of a lawyer. (*See* ECF No. 28, Ex. 2.) The interview lasted for approximately two hours. During this time, Defendant was offered food, water and a bathroom break. (*Id*. at 17.) There are no facts to suggest that Defendant was physically threatened or forced to give a statement. (*Id*.) During the interview, Defendant confessed to having a weapon. (*Id.* at 8.) After making the incriminating statement, Defendant requested a lawyer and the interview ended. (*Id*.) The Court notes that Defendant Lurry did not testify at the suppression hearing. (ECF No. 40.)

A federal grand jury in the Western District of Tennessee returned a two-count indictment against Lurry on March 25, 2021, charging him with violations of 18 U.S.C. § 922(g)(1) & (9): unlawful possession of ammunition by a felon, and unlawful possession of ammunition by a person convicted of misdemeanor domestic assault.[3] (ECF No. 1.)

The parties do not make any objections to the proposed findings of fact. Accordingly, the Court **ADOPTS** the Chief Magistrate Judge's proposed findings of fact regarding the events leading to Defendant's arrest and confession.

## LEGAL ANALYSIS

The Chief Magistrate Judge recommends that the Court deny Defendant's Motion to Suppress because Defendant's waiver of his *Miranda* rights was valid and the accompanying

---

[3] A federal grand jury in the Western District of Tennessee returned a first superseding indictment on September 29, 2022. ECF No. 53.)

incriminating statement to police was made voluntarily. (ECF No. 42, 17.) Also, the Chief Magistrate Judge concluded that the alleged misrepresentation by police did not overcome the Defendant's will, and the officer's conduct was not a motivating factor for Defendant to make the statement. (*Id.*)

Defendant objects to the R & R by arguing that the waiver of his *Miranda* rights was invalid because prior to making the statement, he was repeatedly told by Sergeant Hardaway that he was the victim, and he would not be arrested. (ECF No. 45, 8-10.) Defendant also argues that his incriminating statement was made involuntarily because Sergeant Hardaway's statements constituted coercive conduct, the coercion was sufficient to overbear Defendant's will, and the alleged police misconduct was a crucial motivating factor in Defendant's decision to make the statement. (*See* ECF No. 45, 11-15.) The Government responds that Lurry's "objections are a rehashing of the same arguments previously made, and thoroughly analyzed by the Chief Magistrate Judge." (ECF No. 51.)

*Waiver of Miranda Rights*

In the Motion to Suppress and the objections to the R & R, Defendant alleges that the waiver of his *Miranda* rights is invalid because prior to signing the waiver, he was repeatedly told by officers that he was the victim and that he would not be arrested. (ECF No. 45, 7-8.) The Chief Magistrate Judge found that based on the totality of the circumstances, Defendant's *Miranda* waiver was valid because it was made knowingly, voluntarily and intelligently. (ECF No. 42, 17.) The Chief Magistrate Judge reached this determination based on the facts elicited during the hearing that Lieutenant Jenkins read the advice of rights form aloud to Defendant, and Defendant placed his initials next to each right, indicating that he understood them. (*Id.* at 16.) The Chief Magistrate Judge also found that Defendant was not physically threatened, and immediately after

5

making the incriminating statement, Defendant "requested a lawyer and ended the interview, showing that he was aware of and understood his rights." (*Id.* a 17.)

If an individual is in police custody, officers are prohibited from questioning that individual unless and until *Miranda* warnings have been given. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The requirement of *Miranda* warnings and waiver of those rights is fundamental with respect to the Fifth Amendment right against self-incrimination. (*Id.* at 476). Waiver of *Miranda* warnings must be given knowingly, voluntarily, and intelligently. *Colorado v. Spring*, 479 U.S. 564, 572 (1987). There are two dimensions to the court's inquiry as to whether a defendant has effectively waived his *Miranda* rights. First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Colorado v. Spring*, 479 U.S. 564, 573 (1987). Second, it "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*; *see also Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005) ("[C]laims regarding *Miranda* waivers must demonstrate not only that the confession was voluntary but also that the confession was knowing and intelligent."). "To determine whether the confession was knowing and intelligent, we apply a totality of the circumstances test to ascertain whether [defendant] understood his right to remain silent and to await counsel." *Clark*, 425 F.3d at 283. The government bears the burden of showing by a preponderance of the evidence that Defendant's *Miranda* waiver was knowing and voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Upon the Court's review of the circumstances surrounding the officer's acquisition of the statement, the Chief Magistrate Judge found that the Defendant's waiver of his *Miranda* rights was made knowingly, voluntarily, and intelligently. The Court agrees. Lieutenant Jenkins ensured

Defendant understood his rights and waiver by reading the advice of rights form aloud and explaining each right, and as noted, the Defendant initialed each right, indicating that he understood each. (ECF No. 42, 17.) Instead, Defendant relies on Detective Hardaway's statements that he was the victim and that he would not be arrested to invalidate the waiver. (ECF No. 45, 9.) However, the Chief Magistrate Judge correctly described the officer's conduct as a tactic used to deescalate a potentially volatile situation. (ECF No. 42, 11.)

The Sixth Circuit has found that a detective's misrepresentations did not invalidate a *Miranda* waiver where: (1) no physical punishment was used, (2) the defendant was not deprived of basic necessities, (3) the interrogation was not unduly lengthy, (4) Defendant had been informed of his *Miranda* rights on three different occasions (5) the defendant clearly understood his rights (6) the defendant did not express any reluctance to talk and (7) he had not requested the presence of an attorney. *Ledbetter v. Edwards*, 35 F.3d 1062, 1069 (6th Cir. 1994). Here, the Defendant was not physically threatened, during the questioning he was offered food, water and a bathroom break, he signed the waiver form next to each right indicating that he understood them, and after making the incriminating statement, Defendant requested a lawyer and the interview ended. (ECF No. 42, 17.) Thus, the Chief Magistrate Judge correctly concluded that Defendant's waiver is valid. Accordingly, upon *de novo* review, the Court **ADOPTS** the Chief Magistrate Judge's finding that Defendant's *Miranda* waiver was valid and **DENIES** Defendant's objection.

*Voluntariness of Defendant's Incriminating Statement*

Defendant also moves to suppress his incriminating statement on the ground that the officers' misrepresentations were coercive conduct that rendered his statement involuntary. (ECF No. 21, 4-7.) Defendant reiterates these reasons for suppression in his objections to the R & R. (*See* ECF No. 45, 10-11.) As stated above, the Chief Magistrate Judge found that the statements

officers made to Defendant were no more than a tactic used to keep Defendant calm and deescalate a potentially volatile situation, and that "not all psychological tactics are considered unconstitutional." (citing *Ledbetter v. Edwards,* 35 F.3d 1062, 1067.) (ECF No. 42, 11.)

When considering the voluntariness of a confession, courts consider the "totality of the circumstances" to determine whether a statement was the "product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). The government bears the burden of showing by a preponderance of the evidence that Defendant's statement was voluntary. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003). There are three requirements for a finding that a statement was involuntary due to police coercion: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

In its *Miranda* analysis above, the Chief Magistrate Judge found, and this Court agrees, that no undue coercion was used by law enforcement that caused Defendant to waive his *Miranda* rights. Defendant repeats his contention that he was coerced into giving a statement, and that acquisition of his statement was involuntary. The Court does not find it necessary to reiterate its factual review and analysis of the issue of police coercion. However, consistent with the recommendation of the Chief Magistrate Judge, the Court does not find that Defendant's will was overborne because he was not physically threatened before making the statement and made the confession after signing the *Miranda* waiver. (ECF No. 42, 16.) The officers' alleged coercion was not a motivating factor that caused Defendant to make the statement. The Court notes that the interview was conducted by a lieutenant who did not assure Lurry that he was considered a victim

8

and that he would not be arrested. (*Id.* at 17.) More importantly, the Court find that any alleged police misconduct did not cause Defendant's will be overborne. The Court finds that Defendant made the incriminating statement voluntarily and free from coercion. Accordingly, upon *de novo* review, the Court **ADOPTS** the Chief Magistrate Judge's finding that Defendant's incriminating statement was made voluntarily and **DENIES** the Defendant's objection.

## CONCLUSION

The Court hereby **ADOPTS** the Chief Magistrate Judge's Report and Recommendation, and **DENIES** Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 21st day of October, 2022.

*s/John T. Fowlkes, Jr.*
John T. Fowlkes, Jr.
United States District Judge